1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT
9       FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   LAWRENCE WILLIAMS,                    Case No.   1:18-cv-00748-AWI-HBK (HC)

12               Petitioner,               FINDINGS AND RECOMMENDATIONS TO
                                           DENY PETITION FOR WRIT OF HABEAS
13        v.                               CORPUS AND TO DECLINE TO ISSUE A
                                           CERTIFICATE OF APPEALABILITY [1]
14   JOE LIZARRAGA,
                                           FOURTEEN-DAY OBJECTION PERIOD
15               Respondent.
                                           (Doc. No. 1)
16
17
18
19

20        Petitioner Lawrence Williams ("Williams" or "Petitioner"), a state prisoner proceeding

21   with counsel, has pending a Petition for writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. No.

22   1, "Petition").  The Petition raises two grounds for relief:  (1) the government had insufficient

23   evidence that Petitioner willfully failed to register his residence because Petitioner did not

24   understand his duty to register his residence due to his illiteracy, and (2) Petitioner had ineffective

25   assistance of counsel because his attorneys failed to investigate and raise the issue of Petitioner's

26   illiteracy.  (*Id*. at 16-19).  For the reasons set forth below, the undersigned recommends the

27   _____

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2022).

1  district court deny Petitioner any relief on his Petition and decline to issue a certificate of
2  appealability.

3                                      **BACKGROUND**

4         **A.  Procedural History**

5         Williams initiated this case on May 30, 2018 by filing a pro se petition for writ of habeas
6  corpus under 28 U.S.C. § 2254.  (Doc. No. 1).  On August 20, 2018, Respondent moved to
7  dismiss the petition as untimely.  (Doc. No. 13).  On January 24, 2019, the previously assigned
8  magistrate judge issued findings and recommendations to deny Respondent's motion to dismiss
9  but allow Respondent to renew the timeliness issue in the answer to the Petition; and the findings
10 and recommendations were adopted in full on March 11, 2019.  (Doc. Nos. 20-21).  On June 19,
11 2020, Respondent filed an answer to the Petition renewing the timeliness argument and
12 addressing the merits of the Petition.  (Doc. No. 31).  On November 13, 2020, the then-assigned
13 magistrate judge appointed Petitioner counsel.  (Doc No. 40).  On November 17, 2020, the case
14 was reassigned to the undersigned.  (Doc. No. 41).

15        After being granted multiple extensions of time, Petitioner moved to file a limited reply to
16 Respondent's answer, addressing only the timeliness argument.  (Doc. Nos. 43, 47, 49, 51-52).
17 The Court granted Petitioner's motion (Doc. No. 53) and Petitioner filed a reply limited only to
18 addressing the timeliness argument.  (Doc. No. 54).  On August 25, 2021, the undersigned issued
19 an order finding that the Petition was time-barred under AEDPA's statute of limitations, and
20 directing Petitioner to expand the record and make arguments as to his request for equitable
21 tolling.  (Doc. No. 55).  After Petitioner filed objections, the undersigned vacated the August 25,
22 2021 order.  (Doc. Nos. 57).  On September 15, 2021, Respondent withdrew the untimeliness
23 argument.  (Doc. No. 58).  On November 13, 2021, Petitioner filed a traverse.  (Doc. No. 62).
24 The matter is deemed submitted on the record before the Court.

25        **B.  Facts Based Upon the State Court Record**

26        In 2014, a Fresno County jury convicted Williams of failing to register a residence in
27 violation of California Penal Code § 290.011(b), which requires a sex offender who moved to a
28 new residence to register the new address within five days.  (*See* Doc. No. 15-2).  This conviction

1  resulted in Petitioner's third strike under California's three-strike law, and Petitioner was

2  sentenced to a term of twenty-five years to life in prison.  (*Id*.).

3       To put Petitioner's arguments in context, the undersigned includes a brief summary of the

4  relevant trial evidence.  Armond French, a detective with the Fresno police department who

5  monitors and registers sex offenders for the Fresno Police Department, testified that a form 8047

6  or 8047S is notification of a registrant's requirement to register as a sex offender for life.  (Doc.

7  No. 32-9 at 187).  In evidence was a form listing Petitioner's conviction and notifying Petitioner

8  of his duty to register.  (*Id*. at 187-89; *see also* Doc. No. 31-1 at 76-90).  Thereafter, each time he

9  registers, a registrant must go into the office and fill out a personal history questionnaire on a

10  form 8102 or 8102S.  (*Id*. at 175-76).  The form includes personal information such as name,

11  "what they're there for," and "if they're there for a transient update, annual update on the

12  birthday, a change in their address, or if they just got released from prison."  (*Id*. at 175).  The

13  registrant fills out the personal history questionnaire by themselves, which is then given to the

14  registration officer who takes the form back to the office and fills out the 8102 form with the

15  information provided by the registrant.  (*Id*. at 175-76).  Next, the registration officer meets with

16  the registrant and "goes through the registration forms with them" in a step by step manner,

17  including individual requirements on the back of the form "that they have to initial and fingerprint

18  and sign each form stating that they understand the requirements."  (*Id*. at 176-77).  During direct

19  examination, French testified:

20      A: They go -- **they make sure they understand all the
requirements and we ask them can they read or write.  If they
don't read or write, we'll explain all the registration
requirements for them.  If they don't understand any of them,
we'll explain it to them.**  They then go over the form with them,
make sure that they're there for – if they're there for a transient,
they're registering as a transient.  If they're there for an address
change, that they do an address change.  They make sure it's the
city of Fresno.  They make sure that this is the person that they're
talking to by a photograph being in the folder.  They then have
them initial all the requirements, and make sure that the security –
the Social Security matches up with the person that they're dealing
with.

27      Q: Okay. So if they can read does the person who's registering the
individual they still read each requirement to that person?

3

A: No.

Q: So how will a person like you determine if the person coming in to register properly understands each term?

A: We ask them if they understand all the requirements.

Q: Okay. And will you do that collectively, individually? Like, you know, like all 20 requirements, go one by one, how is it done?

A: We give them the general rundown. It's basically five days before or after your birthday, five days before or after you move, every 30 days if you're transient. We ask them if they understand all the requirements, and if they say no, then we go over each one with them.

Q: Okay. And then, they initial on the left side of each requirement for you to properly understand whether they understand?

A: Yes.

(*Id*. at 185-86) (emphasis added).  Detective French also testified that after the registrant initials each of the listed requirements the back of the form indicating that they understand each requirement, and the registrant also signs the document and places a thumbprint at the bottom of the form.  (*Id*. at 189-92).

Transient registrants are required to come in every 30 days to register.  (*Id*. at 183-84). Detective French testified that Petitioner registered as a transient on June 15, 2011, July 13, 2011, August 17, 2011, and September 14, 2011.  (*Id*. at 191; *see also* Doc. No. 31-1 at 2-3, 10-21).  In evidence were fourteen pages of "personal history questionnaires for Mr. Williams."  (*Id*. at 181-82).  Petitioner signed the forms and initialed the paragraph on the back of the registration form acknowledging that "If I am registered at a residence address and become transient or I am registered as a transient and move to a residence, I have five working days within to register in person with the law enforcement agency having jurisdiction over the new address or to register as a transient."  (*Id*. at 183).  "The defense and the People agree or stipulate that the thumb prints on the 8102S form and the SS8047 forms submitted into evidence are the defendant's, Lawrence Williams."  (Doc. No. 32-10 at 50).

Kerwin Malvoux testified that he and Petitioner moved into the Tupman Avenue residence at the same time, on or around June 17, 2011, and that Anntanicka Wilson moved in

4

about two or three months later.  (Doc. No. 32-9 at 107-13).  He testified that he lived with Petitioner from June to October of 2011.  (*Id*. at 119).  Wilson, the daughter of one of Petitioner's friends, Bobby Wilson, testified that she lived with Petitioner at the Tupman Avenue residence for three or four months in 2011.  (*Id*. at 27-34).  Their rental period began in July, and Michelle Meyers, the landlord of the Tupman Avenue residence testified that Petitioner came into her office with Ms. Wilson and her father to sign the lease.  (*Id*. at 74-83, 94-95).  She testified that Petitioner personally assured her that rent would be paid.  (*Id*. at 82-83).

On October 6, 2011, Petitioner was arrested for assaulting Malvoux with a deadly weapon, and witnesses to that incident reported that Petitioner lived at 2160 South Tupman Avenue in Fresno, California.  (*Id*. at 178-79).  After Petitioner was arrested, Wilson's father asked her to help move Petitioner's personal belongings from his room to the laundry room.  (*Id*. at 37-38).  Malvoux also testified that he helped move Petitioner's belongings.  (*Id*. at 130-36) .

Detective French testified that in November 2011, after Petitioner's arrest, his partner informed him that witnesses to the incident reported that Petitioner was living at the Tupman Avenue residence.  (*Id*. at 178).  On November 17, 2011 French contacted Malvoux and Wilson, both of whom confirmed that Petitioner had been living at the Tupman Avenue residence for approximately five months, and Wilson provided Detective French with mailings addressed to Petitioner at the Tupman Avenue residence.  (*Id*. at 179, 193-97).  Thus, Detective French testified that Petitioner was in violation of California Penal Code § 290.011(b) for failing to register within five working days of getting a residence.  (Doc. No. 32-10 at 23-24)

## II.  APPLICABLE LAW

### A.  AEDPA General Principles

A federal court's statutory authority to issue habeas corpus relief for persons in state custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  AEDPA requires a state prisoner seeking federal habeas relief to first "exhaus[t] the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  If the state courts do not adjudicate the prisoner's federal claim "on the merits," a *de novo* standard of review applies in the federal habeas proceeding; if the state courts do adjudicate the claim on

the merits, then the AEDPA mandates a deferential, rather than *de novo*, review. *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016). This deferential standard, set forth in § 2254(d), permits relief on a claim adjudicated on the merits, but only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and intentionally difficult to satisfy. *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018); *White v. Woodall*, 572 U.S. 415, 419 (2014).

"Clearly established federal law" consists of the governing legal principles in the decisions of the United States Supreme Court when the state court issued its decision. *White*, 572 U.S. at 419. Habeas relief is appropriate only if the state court decision was "contrary to, or an unreasonable application of," that federal law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407, (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The petitioner must show that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

1    When reviewing a claim under § 2254(d), any "determination of a factual issue made by a

2    State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting

3    the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Burt*

4    *v. Titlow*, 571 U.S. 12, 18 (2013) ("[A] state-court factual determination is not unreasonable

5    merely because the federal habeas court would have reached a different conclusion in the first

6    instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

7    As discussed earlier, for the deferential § 2254(d) standard to apply there must have been

8    an "adjudication on the merits" in state court.  An adjudication on the merits does not require that

9    there be an opinion from the state court explaining the state court's reasoning.  *Richter*, 562 U.S.

10   at 98.  "When a federal claim has been presented to a state court and the state court has denied

11   relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

12   of any indication or state-law procedural principles to the contrary."  *Id*. at 99.  "The presumption

13   may be overcome when there is reason to think some other explanation for the state court's

14   decision is more likely."  *Id*. at 99-100.  This presumption applies whether the state court fails to

15   discuss all the claims or discusses some claims but not others.  *Johnson v. Williams*, 568 U.S.

16   289, 293, 298-301 (2013).

17   While such a decision is an "adjudication on the merits," the federal habeas court must

18   still determine the state court's reasons for its decision in order to apply the deferential standard.

19   When the relevant state-court decision on the merits is not accompanied by its reasons,

20          the federal court should "look through" the unexplained decision to
       the last related state-court decision that does provide a relevant
21          rationale. It should then presume that the unexplained decision
       adopted the same reasoning.  But the State may rebut the
22          presumption by showing that the unexplained affirmance relied or
       most likely did rely on different grounds than the lower state court's
23          decision, such as alternative grounds for affirmance that were
       briefed or argued to the state supreme court or obvious in the record
24          it reviewed.

25   *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  The federal court "looks through" the silent state

26   court decision "for a specific and narrow purpose—to identify the grounds for the higher court's

27   decision, as AEDPA directs us to do."  *Id*. at 1196.

28

> When . . . there is no reasoned state-court decision on the merits, the federal court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 562 U.S. at 102.  If such disagreement is possible, then the petitioner's claim must be denied. *Ibid.*

*Sexton*, 138 S. Ct. at 2558.

Here, the parties appear to disagree as to the last reasoned decision on Petitioner's claims, and the resulting standard of review.  As to Petitioner's insufficiency of the evidence claim, Respondent cites an April 12, 2017 California Superior Court order rejecting Petitioner's argument in a habeas petition that the evidence at trial did not support an inference that he actually knew of his duty to register.  (Doc. No. 31 at 30 (citing Doc. No. 15-11)).  In contrast, Petitioner contends the last reasoned decision is the California Supreme Court's April 11, 2018 order denying Petitioner's claims with citations to *People v. Duvall*, 9 Cal. 4th 464, 474 (1995) and *In re Swain*, 34 Cal. 2d 300, 304 (1949).  (Doc. No. 62 at 20, citing Doc. No. 15-15).

The Court agrees with Petitioner.  The Petition currently before the Court asserts claims that the evidence was insufficient that Petitioner understood his duty to register because of illiteracy, and counsel was ineffective for failing to investigate and present evidence that Petitioner was unable to understand his duty to register for the same reason.  (Doc. No. 1 at 16-19).  In contrast, the Superior Court opinion cited by Respondent rejected Petitioner's claim in a previous state habeas petition initially filed on February 23, 2017, claiming that the evidence was insufficient and counsel was ineffective because they did not present evidence of actual knowledge, without reference to illiteracy or mental capacity.  (Doc. No. 15-10).  Here, the relevant state habeas petition exhausting the precise grounds for relief now before this Court was filed on December 19, 2017.  (Doc. No. 15-12).  The Appeals Council summarily denied the petition, and, as noted by Petitioner, the California Supreme Court rejected the state habeas petition with citations to *Duvall* and *Swain*.  (Doc. Nos. 15-13, 15-15).  This was the last reasoned decision on the same claims raised by Petitioner in the Petition currently before the Court.

Petitioner notes that the Ninth Circuit has "unequivocally state[d] that the California

1   Supreme Court's issuance of a summary denial with citations to *In re Swain* and *People v. Duvall*

2   is 'in effect the grant of a demurrer….' and is to be considered a 'reasoned decision.'

3   Accordingly, because here the California Supreme Court denied relief on a procedural ground via

4   its citations to *In re Swain* and *People v. Duvall* and did not address the merits of Petitioner's

5   claim, we are required to review Petitioner's constitutional claim *de novo* rather than under the

6   AEDPA's deferential standard." *Carter v. Tampkins*, 2018 WL 5024172, at *9-10 (S.D. Cal. Oct.

7   17, 2018) (citing *Curiel v. Miller*, 830 F.3d 864, 869 (9th Cir. 2016); *Seeboth v. Allenby,* 789 F.3d

8   1099, 1103 (9th Cir. 2015) (noting that if the California Supreme Court dismissed on a procedural

9   ground, the court would review petitioner's claims *de novo*, in light of the state's failure to raise

10  procedural default).  Regardless, "[c]ourts can ... deny writs of habeas corpus under § 2254 by

11  engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a

12  habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de*

13  *novo* review, see § 2254(a)." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010); *see also*

14  *Flournoy v. Small*, 681 F.3d 1000, 1004 n.1 (9th Cir. 2012) ("While we ordinarily resolve the

15  issue of procedural bar prior to any consideration of the merits on habeas review, we are not

16  required to do so when a petition clearly fails on the merits.").  Thus, even if there were a

17  question about whether AEDPA deference applies, *de novo* review is permissible here.

## III.  ANALYSIS

### A.  Ground One: Insufficient Evidence

#### 1.  Background

21      Petitioner argues there is insufficient evidence that he actually knew he had a duty to

22  register at a residence rather than as a transient.  (Doc. No. 62 at 26-30).  In support of this

23  argument, Petitioner cites his own declaration that he repeatedly told his attorneys that he has no

24  memory of anyone explaining his duty to register, he has "medical issues which hinder my ability

25  to comprehend what is written and stated" including physical and psychological diagnoses over a

26  thirty year period, and he is illiterate.  (Doc. No. 1 at 21).  Petitioner also attaches exhibits to the

27  Petition that reveal a previous diagnosis of schizophrenia, prescription of multiple mental health

28  medications, observations that he was a poor historian, had a poor verbal productivity, had

1   poverty of thinking, "cannot read or write but can sign his name"; and a more recent cognitive

2   assessment that Petitioner had good verbal skills, good short and long term memory, he was very

3   knowledgeable about prison policies and procedures, and he had normal cognitive functioning.

4   (Doc. No. 1 at 37-50).

5        Petitioner concedes that "the trial court did establish notification was given" by

6   introducing evidence that he repeatedly updated his transient registration including initialing a

7   portion of the form directing that he was required to register within 5 working days of moving

8   into a residence (*see* Doc. No. 31-1- at 3);  however, Petitioner asserts that the court "never

9   established whether petitioner actually understood what he had been notified of" and "no proof

10  was offered that petitioner understood what was presented to him."  (Doc. No. 1 at 16-18 (citing

11  *People v. Aragon*, 207 Cal. App. 4th 504, 510-11 (2012) ("The word 'willfully' implies a

12  'purpose or willingness' to make the omission.  Logically one cannot purposefully fail to perform

13  an act without knowing what act is required to be performed… Accordingly, a violation of

14  section 290 requires actual knowledge of the duty to register.  A jury may infer knowledge from

15  notice, but notice alone does not necessarily satisfy the willfulness requirement.")).  In his

16  traverse, Petitioner additionally argues that the prosecution did not present evidence that he was

17  verbally informed as to the difference between having a residence and being a transient, and no

18  witnesses testified to reviewing the advisements included in the registration form with Petitioner.

19  (Doc. No. 62 at 29).  Thus, Petitioner argues there is insufficient evidence that he "willfully"

20  failed to register within 5 working days of moving into a residence, in violation of California

21  Penal Code § 290.011(b), because he did not have actual knowledge of his duty to register.

22        Respondent argues no Supreme Court case has held jurors could not find Petitioner's

23  acknowledgement in writing that he understood the registration requirement was the most

24  reasonable explanation that he "in fact understood" the duty to register his residence; that it was

25  reasonable for the jurors to rely on testimony at trial regarding procedures put in place to ensure

26  "even an illiterate" registrant understood the duty to register; and it was reasonable for the jurors

27  to infer "as a matter of common sense that a person normally would not willingly convey in

28

10

1  writing – particularly in a law enforcement context – if he does not know how to read and write."
2  (Doc. No. 31 at 31).

3  **2.  Petitioner is Not Entitled to Relief**

4  The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from
5  conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the
6  crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  The federal standard
7  for determining the sufficiency of the evidence to support a jury finding is set forth in *Jackson v.*
8  *Virginia*, 443 U.S. 307 (1979).  Under *Jackson*, "the relevant question is whether, after viewing
9  the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have
10  found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in
11  original); *see also Coleman v. Johnson*, 566 U.S. 650, 656 (2012) ("the only question under
12  *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare
13  rationality"); *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (a reviewing court "may set aside the jury's
14  verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed
15  with the jury")' *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) ("we acknowledge
16  our obligation under Jackson to identify those rare occasions in which 'a properly instructed jury
17  may … convict even when it can be said that no rational trier of fact could find guilt beyond a
18  reasonable doubt").

19  The *Jackson* standard "must be applied with explicit reference to the substantive elements
20  of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16; *Juan H. v. Allen*,
21  408 F.3d 1262, 1275-76 (9th Cir. 2005).  The Court will look to state law to establish the
22  elements of the offense and then turn to the federal question of whether any rational trier of fact
23  could have found the essential elements of the crime beyond a reasonable doubt.  *See Johnson v.*
24  *Montgomery*, 899 F.3d 1052, 1056 (9th Cir. 2018).

25  Petitioner was convicted of failing to register as a sex offender in violation of California
26  Penal Code § 290.011(b), which required the prosecutor to prove beyond a reasonable doubt that
27  Petitioner (1) was previously convicted of rape, a violation of Penal Code section 261.3 on
28  September 21, 1981 in Merced Superior Court, Case No. 10399, and required to register pursuant

11

1  to Penal Code section 290; (2) resided in the City of Fresno, within the Count of Fresno, State of

2  California; (3) actually knew he had a duty under Penal Code section 290 to register as a sex

3  offender residing at 2160 S. Tupman, #102, Fresno, California and that he had to register within

4  five working days of moving to the residence; and (4) willfully failed to register as a sex offender

5  with the police chief of that city within five working days of moving into 2160 S. Tupman, #102

6  within that city.  (Doc. No. 32-2 at 213-14); Cal. Penal Code § 290.011(b) ("A transient who

7  moves to a residence shall have five working days within which to register at that address, in

8  accordance with subdivision (b) of Section 290.").  The California Supreme Court has determined

9  that a defendant can properly be convicted of willful failure to comply with Section 290 only if

10  the jury finds the defendant had actual knowledge of the statutory duty to register.  *People v.*

11  *Garcia*, 25 Cal.4th 744, 752 (2001) (upholding a conviction for a Section 290 registration

12  violation and requiring proof of both a "willful" failure to register as specified in subdivision

13  (g)(2) and of the defendant's actual knowledge of the duty to register); *see People v. Poslof*, 126

14  Cal. App. 4th 92, 98 (2005) (a finding of willfulness requires proof: (1) the defendant had actual

15  knowledge of the duty to register a residence and (2) the defendant failed to register).  "The

16  willfulness element of the offense may be negated by evidence that an involuntary condition—

17  physical or mental, temporary or permanent—deprived a defendant of actual knowledge of his

18  duty" to register.  *People v. Sorden*, 36 Cal.4th 65, 69 (2005).  However, "[o]nly the most

19  disabling of conditions" would qualify under this standard, such as severe Alzheimer's disease or

20  general amnesia induced by severe trauma.  *Id.*

21       The Court has carefully reviewed Petitioner's allegations, supporting exhibits, and the

22  record, and concludes that Petitioner has not demonstrated that no rational trier of fact could have

23  agreed with the jury.  *Nevils*, 598 F.3d at 1167.  The evidence adduced at trial included a detailed

24  description of the measures taken by Fresno detectives to ensure registrants' actual understanding

25  of the registration requirements regardless of cognitive capacity, including asking them directly if

26  they comprehend the requirements in one-on-one counseling before the registrant initials, signs,

27  and places their thumbprint on the registration paperwork; and submission of Petitioner's own

28  initial and signature on multiple registration forms indicating that he has "read, understood and

initialed each registration requirement specified on page 2 of [the] form" and it is his "duty to know the registration requirements," including that he has 5 working days to register after moving into a residence.  (Doc. No. 31-1 at 2-3).

Petitioner concedes that he knew "generally" of this duty to register, but contends that his illiteracy made it "impossible" for him to understand the registration requirement; there was no evidence presented that Petitioner "actually knew" he had to register at a residence rather than as a transient; and that the prosecution presented no witnesses to testified that that they reviewed the advisements with Petitioner.  (Doc No. 1 at 17; Doc. No. 62 at 29).  However, while "notice alone does not necessarily satisfy the willfulness requirement" because guilt turns on what the defendant did *not* do, "a jury may infer from proof of notice that the defendant did have actual knowledge, which *would* satisfy the requirement," and "[t]he actual knowledge test satisfies constitutional requirements."  *White v. Dexter*, 2009 WL 1424373, at *12 (E.D. Cal. May 20, 2009) (citing *Garcia,* 25 Cal.4th at 752); *People v. Jackson*, 109 Cal. App. 4th 1625, 1632-33 (2003) (the existence and sufficiency of the evidence of actual knowledge and willfulness are factual questions that must be decided by the jury; and filling out, signing and initialing an annual registration update with local police was "strong evidence that defendant actually knew" of the existing registration requirements).

It was the jury's responsibility to decide what conclusions should be drawn from the evidence presented at trial.  *Cavazos*, 565 U.S. at 2; *Nevils*, 598 F.3d at 1170 (in assessing sufficiency of the evidence claim, it is not the court's function to reweigh the evidence).  The jury was instructed on the elements necessary to convict under California Penal Code § 290.011(b), including the requirements that Petitioner actually knew he had a duty to register as a sex offender within 5 working days of moving into a residence and willfully failed to register; and the jury reasonably inferred from the evidence presented that Petitioner had actual knowledge of the registration requirement.  This evidence, outlined in detail above, included testimony as to the individual counseling provided as part of the registration process to ensure understanding regardless of illiteracy, and Petitioner's repeated signature, initial, and thumbprint on his monthly registration paperwork acknowledging that he understood the registration requirements.

13

Moreover, the Court's independent review of the medical records attached to the Petition do not demonstrate that Petitioner had an involuntary condition of sufficient magnitude to deprive him of the knowledge of his duty to register. *See Sorden,* 36 Cal.4th at 69.

Finally, in support of this argument, Petitioner cites "[c]ases that have discussed the 'actual knowledge' and 'willfulness' elements that are required to support a conviction for failing to register illustrat[ing] that knowledge of the duty to register can be confusing where, as here, a defendant has multiple residences or live in transitory or impermanent dwellings." (Doc. No. 62 at 28-29). Petitioner's reliance on these cases is misplaced. For instance, in *People v. Aragon,* the court found insufficient evidence to show defendant had actual knowledge that a travel trailer was a residence; however, the court also noted that "defendant had notice that he was required to register at a residence" and "that notice would suffice as substantial evidence of actual knowledge if he had moved to what was commonly understood to be a residence." (Doc. No. 62 at 28 (citing Aragon, 207 Cal. App. 4th at 504)). Here, the jury was presented with evidence that Petitioner resided at 2160 S. Tupman, #102 during the relevant period, and the Court discerns no evidence presented at trial or as part of Petitioner's habeas Petition to indicate that said residence was not within the common understanding of a residence. Petitioner also cited cases where the court reversed convictions based on a lack of actual knowledge that defendant was required to register at a second additional residence. *People v. Edgar,* 104 Cal. App. 4th 210, 220-21 (2002); *People v. LeCorno,* 109 Cal. App. 4th 1058, 1068-69 (2003). Again, the instant case is distinguishable as no argument was made at any point in the proceedings that Petitioner had multiple residences and was unaware of a requirement to register a second time. Rather, the jury was presented with evidence that Petitioner regularly registered as a transient even after moving into a residence, had actual knowledge of his duty to register within 5 days of moving into a residence, and willfully failed to register in violation of California Penal Code § 290.011(b).

Based on the foregoing, in the light most favorable to the prosecution, and given the elements of the crime defined by the state court, the Court finds that a rational trier of fact could have found proof beyond a reasonable doubt that Petitioner had actual knowledge of his duty to register as a sex offender within 5 days of moving into a residence and willfully failed to register.

14

1   Accordingly, Petitioner is not entitled to relief on his claim of insufficient evidence.  The

2   undersigned recommends that ground one be denied.

3         **B.  Ground Two: Ineffective Assistance of Counsel**

4              **1.  Background**

5         Petitioner argues that both his trial and appellate counsel were ineffective in failing to

6   investigate and present evidence of his mental impairments and capacity to actually understand

7   his duty to register.  (Doc. No. 62 at 30).  In support of this argument, Petitioner asserts that he

8   "constantly complained" to his trial and appellate counsel that did not have to register and did not

9   understand he why he was being charged with failure to register; and that based on these

10  complaints "[c]ounsel should have investigated the matter which he then would have discovered

11  the fact that his client was illiterate and never at any point had actual knowledge of his duty to

12  register." (Doc. No. 1 at 18-19).  Petitioner also claimed that he was informed by appellate

13  counsel that she "could not bring up the issue" and it was his belief that she recognized his

14  illiteracy but "could not bring it up on direct appeal." (*Id*. at 19).  Finally, Petitioner argues that

15  trial counsel's failure to investigate his inability to comprehend was prejudicial because had "trial

16  counsel established the facts of petitioner's inability to comprehend, it could have changed the

17  outcome of the trial or at least had an effect on the sentencing phase." (*Id*.)  Specifically, in his

18  traverse, Petitioner contends that evidence of his mental impairments would have negated the

19  element of actual knowledge that the prosecution had the burden of proving beyond a reasonable

20  doubt.  (Doc. No. 62 at 38).

21        In its Answer, Respondent argues that there was "considerable affirmative evidence to

22  compel the inference that Petitioner is just false in his habeas claim that he does not comprehend

23  the written word.  Rather it would be reasonable to infer that he does so comprehend." (Doc. No.

24  31 at 32-33.  This evidence included handwritten notes to the trial court in an attempt to obtain

25  different counsel, and "directing the court's attention to what he deemed to be relevant on

26  sentencing." (Doc. No. 32-3 at 197-203).  Thus, Respondent contends it would be reasonable for

27  his attorney to conclude that closer inspection of Petitioner's history would lead to evidence that

28  he did have the capacity to understand the registration requirement, or to conclude that it was

1  irrelevant to pursue the issue in light of the evidence of procedures implemented to ensure actual

2  understand of the registration requirement.  (Doc. No. 31 at 33-34).

3  **2.  Petitioner is Not Entitled to Relief**

4  A two-step analysis governs petitioner's ineffective assistance of counsel ground for

5  relief.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under the first prong of that test, the

6  petitioner must prove that his attorney's representation fell below an objective standard of

7  reasonableness.  *Id*. at 687-88.  To demonstrate deficient performance, the petitioner must show

8  his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed

9  the defendant by the Sixth Amendment."  *Id*. at 687; *Williams v. Taylor*, 529 U.S. 362, 391

10 (2000).  In reviewing trial counsel's performance, however, "counsel is strongly presumed to

11 have rendered adequate assistance and made all significant decisions in the exercise of reasonable

12 professional judgment."  *Strickland*, 466 U.S. at 690; *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

13 Only if counsel's acts and omissions, examined within the context of all the circumstances, were

14 outside the "wide range" of professionally competent assistance, will petitioner meet this initial

15 burden.  *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986); *Strickland*, 466 U.S. at 689-90.

16 Under the second part of *Strickland's* two-prong test, the petitioner must show that he was

17 prejudiced by counsel's conduct.  466 U.S. at 694.  Prejudice is found where there is a reasonable

18 probability that, but for his counsel's errors, the result would have been different.  *Id*.  The errors

19 must not merely undermine confidence in the outcome of the trial, but must result in a proceeding

20 that was fundamentally unfair.  *Williams*, 529 U.S. at 393 n.17; *Lockhart v. Fretwell*, 506 U.S.

21 364, 372 (1993).  The petitioner must prove both prongs:  deficient performance and prejudice.  A

22 court need not, however, determine whether counsel's performance was deficient before

23 determining whether the petitioner suffered prejudice as the result of the alleged deficiencies.

24 *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of

25 lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

26 Here, as to the first prong, Petitioner failed to show that trial and appellate counsel's

27 representation fell below an objective standard of reasonableness.  Petitioner claims that counsel

28 was ineffective for failing to investigate and present evidence of Petitioner's inability to

1  comprehend that he was required to register when he moved into a residence.  In support of this

2  argument, Petitioner attaches a few medical records of remote mental health treatment; and he

3  relies on his own sworn declaration that he is illiterate and has mental health issues, and

4  "constantly" explained to both his trial and appellate attorneys that he did not understand the

5  requirement to register and did not "have any memory of it ever being explained to me in a way I

6  could understand."  (Doc. No. 1 at 21).

7       It is well-established that defense counsel has a "duty to make reasonable investigations or

8  to make a reasonable decision that makes particular investigations unnecessary."  *Strickland,* 466

9  U.S. at 691.  However, "the duty to investigate and prepare a defense is not limitless...."

10  *Hendricks v. Calderon,* 70 F.3d 1032, 1040 (9th Cir. 1995).  A court must "conduct an objective

11  review of the attorney's performance, measured for 'reasonableness under prevailing professional

12  norms.'"  *Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (quoting *Strickland*, 466 U.S. at 688).  This

13  includes a "context-dependent consideration of the challenged conduct as seen 'from counsel's

14  perspective at the time.' " *Id.* (quoting *Strickland*, 466 U.S. at 689).  Furthermore, "ineffective

15  assistance claims based on a duty to investigate must be considered in light of the strength of the

16  government's case."  *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986).

17       On the record in this case, the undersigned cannot conclude that trial or appellate

18  counsel's performance fell below the applicable standard.  Petitioner has not overcome the strong

19  presumption that counsel made an informed and reasoned tactical decision not to pursue a weakly

20  supported theory that Petitioner did not actually understand his duty to register within five days of

21  moving into a residence.  Nor is there any evidence that counsel did not investigate evidence of

22  Petitioner's alleged illiteracy and decide not to present that evidence for strategic reasons.  *See*

23  *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) ("The law does not require counsel to raise

24  every available nonfrivolous defense" or "to have a tactical reason – above and beyond a

25  reasonable appraisal of a claim's dismal prospects for success" – not to pursue it); *Miller v.*

26  *Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) ("In many instances, appellate counsel will fail to

27  raise an issue because she sees little or no likelihood of success on that issue; indeed, the weeding

28  out of weaker issues is widely recognized as one of the hallmarks of effective appellate

17

1    advocacy.").  Under the circumstances, both trial and appellate counsel's actions must be

2    considered to have been an exercise of reasonable professional judgment.  *See Strickland*, 466

3    U.S. at 691.

4         Second, Petitioner cannot show prejudice because, based on the record, even if his trial

5    and appellate counsel had presented Petitioner's relevant medical records and alleged illiteracy as

6    evidence of failure to actually understand, it is not reasonably likely that the jury or appellate

7    court would have ultimately found he did not have actual knowledge of the registration

8    requirement because he was illiterate.  *See Strickland*, 466 U.S. at 694.  The undersigned's review

9    of a handful of medical records attached to the Petition that were included in the state court record

10   below reflects a remote history of mental health complaints and mental health treatment for

11   schizophrenia, including the prescription of mental health medication, and observations that he

12   was a poor historian, had a poor verbal productivity, had poverty of thinking, and "cannot read or

13   write but can sign his name."  (Doc. No. 1 at 39-50).  More recent medical records, and the only

14   assessment of Petitioner's cognitive functioning in the record before the court, note that Petitioner

15   had "deficits in reading and writing"; however, the same record observes that Petitioner had good

16   verbal skills, good short and long term memory, he was very knowledgeable about prison policies

17   and procedures, and he had normal cognitive functioning.  (Doc. No. 1 at 37-38).  It was further

18   recommended that Petitioner exit the Developmentally Disabled Program because he "has no

19   current substantial adaptive support needs stemming from a cognitive impairment."  (*Id.*).

20   Moreover, although the medical records reflect that Petitioner has received treatment for mental

21   health diagnoses and had deficits in reading and writing, there is no indication that Petitioner had

22   cognitive deficits that would have prevented him from understanding the requirement to register

23   when he moved into a residence.

24        In contrast, as discussed in detail *supra*, strong evidence was presented to the jury that

25   Petitioner consistently registered as a transient, and each of his registration forms included his

26   initials, signature, and thumbprint to indicate he actually understood the registration requirements.

27   Moreover, as noted by Respondent, the state court record contains evidence that Petitioner

28   submitted a handwritten motion to the trial court in an attempt to obtain different counsel after

18

conviction, mailed in a notice of appeal, and "showed his comprehension of writing by directing the court's attention to what he deemed to be relevant information on sentencing." (Doc. No. 31 at 32). Thus, Petitioner fails to identify any issue for which there is a reasonable probability that the outcome of the trial or direct appeal would have been different, but for trial or appellate counsel's failure to raise the issue of his alleged illiteracy. *See Strickland*, 466 U.S. at 694; *Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) ("appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal.").

Based on the foregoing, Petitioner has not carried his burden of proving deficient performance or prejudice, and his claim for ineffective assistance of counsel necessarily fails. The undersigned recommends that ground two be denied.

### C. Evidentiary Hearing

Finally, Petitioner generally argues "[a]t the very least [he] should receive an evidentiary hearing to establish the fact that [he] is illiterate and had no actual knowledge of his duty to register." (Doc. No. 1 at 19; Doc. No. 62 at 39-43). Evidentiary hearings are granted only under limited circumstances in habeas proceedings. *See* 28 U.S.C. § 2254(e)(2)(A)(ii); *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999) (AEDPA "now substantially restricts the district court's discretion to grant an evidentiary hearing."); *see also Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) ("Section 2254(e)(2) imposes a limitation on the discretion of federal habeas courts to take new evidence in an evidentiary hearing."). Under 28 U.S.C. § 2254(e)(2):

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error,

no reasonable factfinder would have found the applicant guilty of
the underlying offense.

28 U.S.C.A. § 2254(e) (emphasis added); *see Bragg v. Galaza,* 242 F.3d 1082, 1085, 1089–90 (9th Cir. 2001); *Baja,* 187 F.3d at 1078.  Conversely, if petitioner has not failed to develop the facts in state court, the district court may proceed to consider whether a hearing is appropriate or required under *Townsend v. Sain,* 372 U.S. 293 (1963), *modified by Keeney v. Tamayo-Reyes,* 504 U.S. 1 (1992).  *Baja,* 187 F.3d at 1078.

A prisoner "fails" to develop the factual basis of a claim, triggering § 2254(e)(2), if "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id*. at 437.  In California, an appellate court presented with a state habeas petition determines whether an evidentiary hearing is warranted only after the parties file "formal pleadings," if they are ordered to do so.  *Horton v. Mayle*, 408 F.3d 570, 582 n. 6 (9th Cir. 2005). "If the state court denies the petition without ordering formal pleadings, the case never reaches the stage where an evidentiary hearing must be requested, and the petitioner's failure to request such a hearing in state court does not trigger § 2254(e)(2)."  *Coleman v. Sisto*, 2012 WL 6020095 at *29 (E.D. Cal. Dec. 3, 2012); *Neely v. Director*, 2010 WL 1267808, at *3 (E.D. Cal. Mar. 31, 2010) ("Because the state courts denied the petition without issuing an order to show cause, the case never reached the stage at which petitioner could request an evidentiary hearing").

Here, as noted by Petitioner, because the California Supreme Court denied his state habeas petition without ordering formal pleadings, he did not reach the stage of proceedings at which an evidentiary hearing must be requested; thus, his request for an evidentiary hearing is not subject to the restrictions set forth in § 2254(e)(2).  However, the federal court retains discretion as to whether an evidentiary hearing is warranted.  Petitioner is entitled to an evidentiary hearing if "(1) the allegations of his petition would, if proved, entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." *Williams v. Calderon,* 52 F.3d 1465, 1484 (9th Cir.1995); *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir.

1   2001)(citing *Townsend v. Sain*, 372 U.S. 293 (1963), *modified by Keeney v. Tamayo-Reyes,* 504

2   U.S. 1 (1992)) *Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2002) (as amended Sept. 9,

3   2004) (under pre-AEDPA law, federal habeas petitioner is entitled to evidentiary hearing "if (1)

4   he has alleged facts that, if proven, would entitle him to habeas relief, and (2) he did not receive a

5   full and fair opportunity to develop those facts in a state court").

6        As discussed in detail *supra*, the Court has reviewed Petitioner's claims *de novo* and

7   found them not colorable; thus, an evidentiary hearing is not warranted because the facts

8   Petitioner alleges on federal habeas review, even if true, would not entitle him to habeas relief.

9   *See Deere v. Cullen*, 718 F.3d 1124, 1144, 1148 (9th Cir. 2013) (in habeas proceeding not subject

10  to AEDPA deference, holding that district court properly denied evidentiary hearing because facts

11  alleged by petitioner, even if true, would not entitle him to habeas relief).  It is clear from the

12  record that counsel's conduct did not constitute deficient performance, and even if it were

13  deficient, Petitioner did not suffer resulting prejudice under *Strickland*.  Moreover, a rational trier

14  of fact could have found proof beyond a reasonable doubt that Petitioner had actual knowledge of

15  his duty to register as a sex offender within 5 days of moving into a residence.  These conclusions

16  do not depend on any disputed facts and would not be altered by further development of the

17  factual record.  *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("an evidentiary

18  hearing is *not* required on issues that can be resolved by reference to the state court record.");

19  *Schriro v. Landrigan,* 550 U.S. 465, 466 (2007) (if record refutes applicant's factual allegations or

20  otherwise precludes habeas relief, court not required to hold evidentiary hearing); *see also*

21  *Gandarela v. Johnson,* 286 F.3d 1080, 1087 (9th Cir. 2002), (evidentiary hearing properly denied

22  where the petitioner "failed to show what more an evidentiary hearing might reveal of material

23  import...").  Thus, an evidentiary hearing is unwarranted.  The undersigned recommends denying

24  Petitioner's request for an evidentiary hearing.

25       **IV.  CERTIFICATE OF APPEALABIILTY**

26       A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district

27  court's denial of a petition; he may appeal only in limited circumstances.  *See* 28 U.S.C. § 2253;

28  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 Governing § 2254 Cases requires a

1  district court to issue or deny a certificate of appealability when entering a final order adverse to a

2  petitioner.  *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th

3  Cir. 1997).  A certificate of appealability will not issue unless a petitioner makes "a substantial

4  showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard requires

5  the petitioner to show that "jurists of reason could disagree with the district court's resolution of

6  his constitutional claims or that jurists could conclude the issues presented are adequate to

7  deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327; *accord Slack v.*

8  *McDaniel*, 529 U.S. 473, 484 (2000).  Here, petitioner has not made a substantial showing of the

9  denial of a constitutional right.  Thus, the undersigned recommends that the court decline to issue

10  a certificate of appealability.

11       Accordingly, it is **RECOMMENDED**:

12            1.   An evidentiary hearing be denied.

13            2.   The Petition be denied.  (Doc. No. 1).

14            3.   Petitioner be denied a certificate of appealability.

15                            **NOTICE TO PARTIES**

16       These findings and recommendations will be submitted to the United States district judge

17  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

18  days after being served with these findings and recommendations, a party may file written

19  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

20  Findings and Recommendations."  Parties are advised that failure to file objections within the

21  specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

22  838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

23  Dated:     November 2, 2022

24                                HELENA M. BARCH-KUCHTA
                                 UNITED STATES MAGISTRATE JUDGE

25

26

27

28